■ MARDAN CONSTRUCTION CORP., Appellant, v. VILLAGE OF NYACK HOUSING AUTHORITY, Respondent. (Action No. 1.) (And Three Other Actions.) — In consolidated actions (Action No. 1 is by the general contractor for construction of a housing project in Nyack to recover an alleged balance owed it by the owner and for extra work and damages; and Actions Nos. 2 and 3 are by subcontractors to foreclose mechanics' liens [Action No. 4 was severed at the trial]), (1) plaintiff in Action No. 1, Mardan Construction Corp., appeals, as limited by its notice of appeal and its brief, from so much of a judgment of the Supreme Court, Rockland County, entered December 28, 1970 and made after trial before a Referee (who was appointed to hear and determine the issues), as dismissed the complaint in Action No. 1 upon the merits but without prejudice to appropriate proceedings to effectuate issuance

of a final certificate of completion and to obtain payment of a balance fixed at $74,841.88, with interest from the date of entry of a judgment for that balance; (2) a defendant in Action No. 2, subcontractor A. Luccarelli, Inc., appeals from so much of the judgment as failed to grant recovery to it upon its two cross claims against Marden Construction Corp. and Village of Nyack Housing Authority, as codefendants in that action, and as awarded Marden recovery of $15,632.82 against Luccarelli and (3) plaintiff in Action No. 3, subcontractor Ward Pavements, Inc., appeals from so much of the judgment as dismissed its complaint, denied it costs and granted costs against it to Mardan as a codefendant in that action. After the submission of these appeals, this court received a written stipulation between the respective attorneys for Luccarelli and Mardan, dated September 23, 1971, (1) that the judgment "is in error in and to the extent that it provides that Mardan Construction Corp. recover of A. Luccarelli, Inc. the sum of $15,632.82," and that the judgment should grant Mardan a recovery of $2,308.84 against Luccarelli; and (2) that the three items which comprise Mardan's cross claims against Luccarelli in Action No. 2, totaling $13,323.98, shall "remain as open items to be disposed of by trial or settlement." Judgment modified, on the law and the facts, (1) by striking from the first decretal paragraph thereof subdivision "1", which *inter alia* dismissed Action No. 1 on the merits, and subdivision "3", which *inter alia* dismissed Action No. 3; (2) by substituting therefor a provision granting a new trial as to Actions Nos. 1 and 3 and as to the cross claims of Mardan against Luccarelli and of Luccarelli against the Village of Nyack Housing Authority in Action No. 2; and (3) by reducing the award to Mardan against Luccarelli in the second decretal paragraph from $15,632.82 to $2,308.84. As so modified, judgment affirmed insofar as appealed from, with costs to abide the event. These consolidated actions arose in connection with the construction of a housing project, the Waldron Terrace Apartments Project, in Nyack, New York. Plaintiff in Action No. 1, Mardan Construction Corp. ("Mardan"), was the general contractor engaged by the Village of Nyack Housing Authority to construct 11 two-story buildings on a relatively small site. Action No. 1 is the primary action. Appellants in Actions No. 2 and No. 3 rely upon the record made therein by plaintiff Mardan and have tied in their own success or failure with whether or not Mardan is successful. The first cause of action alleged by Mardan in Action No. 1 was for a balance due and owing under the main contract. This amount was eventually calculated as follows: the original contract price of $799,470, plus the amount of change orders issued by the Housing Authority during performance, namely, $151,881.96, minus the amount paid or stipulated to during the action, namely, $876,510.08, leaving a balance of $74,841.88. This amount is not disputed. Nor is it disputed that Mardan performed all the work required by the contract. The construction advisor who represented the New York State Division of Housing (the governmental agency primarily responsible for funding the job) certified that the work was 100% complete. He withheld the issuance of the final certificate of completion because of the disagreement over the final amount due Mardan. Without the certificate of completion, Mardan was stymied. This disagreement as to amount due centered around change orders issued by the Village Housing Authority. Essentially, a change order, as the name suggests, was an acknowledgment by the architect that some change in the original contract was necessary, which, as the case might be, required an increase (or decrease) in the contract price or an extension of time in which to perform. The orders were approved by the construction advisor and accepted by Mardan. Six of the change orders, however, were executed by Mardan "under protest", i.e., Mardan struck

that portion which stated that all claims against the Village Housing Authority incidental to the change were satisfied; and Mardan, in addition, sent follow-up letters indicating it was reserving all of its rights. The most controversial change order, identified as GC-15, was issued on June 10, 1965, after completion of the project. It proposed a payment to Mardan of $104,982.83 as compensation for the cost of removing rock and boulder material. These materials had been encountered mainly in the summer and fall of 1963 in excavating the foundations of no less than 6 of the 11 buildings. Mardan notified the Authority at the time, and received authorization in the form of " proceed orders ", to remove the materials. Mardan contends that according to the rates specified in the contract for rock excavation it was entitled to receive $208,755, instead of the $104,982.83. The Referee disallowed any claim for this amount on the ground, *inter alia*, that Mardan had failed to comply with the notice requirements, specifically sections 30(a), 42, 63 and 67 of the contract, dealing with claims for compensation for extra work. We cannot accept this reasoning. We find that rock excavation was not " extra work " as defined in the contract. The form of proposal, contract 6, followed and adopted by the parties in April, 1963 prior to executing the contract, specifically stated that the base bid made by Mardan at that time would not include the excess cost of rock excavation over earth excavation. The former was to be quoted in unit prices, which in this case was agreed to be $22.50 " per cubic yard for the excess cost of rock excavation over earth excavation in general cut, including any fill." Thus, when rock was encountered for the first time at the site of building No. 8 in July 1963, the Authority was notified and a few weeks later, on July 30, a proceed order was issued directing the excavation to continue at the " appropriate unit prices as established in the form of proposal ". This was an acknowledgment that the $22.50 unit rate was to apply, at least as far as the building No. 8 covered by that particular order was concerned. The problem is that as rock was uncovered at succeeding building sites, and the Authority was notified, the proceed orders indicated that compensation was to be paid at a " time and material basis in accordance with section 10(a) (3) " of the contract. This was not questioned by Mardan. It appears, therefore, that for those buildings, compensation was on a time and material basis, not at the unit rate. One other proceed order covering rock excavation, proceed order 9 issued in May 1964, dealing with building No. 1, also stated that compensation was to be at the " appropriate unit price as established in the form of proposal ". Therefore, that too should have been computed at the $22.50 per cubic yard unit rate. Mardan contends that, even using the time and material rate, the amount reached by the Authority was too low. We agree. The record shows that the construction adviser at the site verified the accuracy of the time claimed by Mardan for labor and equipment. However, the Authority, without advising Mardan, converted the time the equipment was used, as expressed in hours by Mardan, into " theoretical " months by dividing the total hours by 176 (22 working days per month by 8 hours a day). Before the Referee it was stipulated that an expert, if called, would testify that this was not a proper procedure to follow in the construction industry. No contrary proof was offered. Thus we find the amount authorized in change order 15 was inadequate because (1) it failed to apply the unit rate authorized on two of the proceed orders and (2) it used an improper time rate on the others. There should be a new trial to the extent herein directed so as to allow proof to be presented as to the proper amounts due Mardan under these circumstances. Mardan urges that it is entitled to additional moneys for other reasons. For example, it claims that it should be entitled to recover on a

*quantum meruit* basis, because the changes in the project constituted a *qualitative* change in the work it was required to perform (citing *Tufano Contr. Corp.* v. *State of New York*, 25 A D 2d 329), and that it is entitled to damages for active interference in the performance of the work by the Housing Authority. We find no merit to these claims. It further argues that it is entitled to interest from the date it filed its notice of claim. We disagree. First, section 7 of the form contract specifically provides that no interest shall be paid on any sums withheld from final payment — in this case the $74,841.88. We have found that Mardan is entitled to that amount and that interest should run from the date of entry of judgment. Second, the reason the final certificate was not issued in this case, even though all the work was completed, was that there was a dispute as to whether Mardan was entitled to any additional amounts. We have now found that it is and that the exact amount should be determined upon a new trial. However, the dispute was real, not feigned, and we find the Authority had basis for withholding the certificate. As soon as the additional amount due Mardan is determined and judgment is entered, interest should run from that date. In view of our finding that Mardan is entitled to additional moneys and in view of the fact that the claims of subcontractors Luccarelli and Ward are inexorably tied in with that of Mardan, Luccarelli's cross claims in Action No. 2 as against the Housing Authority, and Action No. 3, should also be remitted for retrial to determine the amounts, if any, due Luccarelli and Ward; and, in view of the stipulation between Luccarelli and Mardan, a new trial should be had also as to Mardan's cross claims as against Luccarelli in Action No. 2. Munder, Acting P. J., Shapiro, Gulotta, Brennan and Benjamin, JJ., concur.